UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VYRON WHEELER,

　　Plaintiff,

　　　v.

EXECUTIVE OFFICE OF U.S.
ATTORNEYS,

　　Defendants.

Civil Action No. 05–1133 (CKK)

**MEMORANDUM OPINION**
(September 18, 2006)

Plaintiff Vyron Wheeler, who is proceeding *pro se*, filed suit in the instant case against

Defendant, the Executive Office of United States Attorneys ("EOUSA") pursuant to the Freedom

of Information Act (hereinafter, "FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a,

to obtain documents related to Plaintiff's criminal conviction.  Presently before the Court are

Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment, both

of which are fully briefed.  Based on the aforementioned filings, the administrative record, and

the relevant statutes and case law, the Court shall DENY WITHOUT PREJUDICE [19]

Defendant's Motion for Summary Judgment, and HOLD IN ABEYANCE [35] Plaintiff's

Motion for Summary Judgment pending further briefing.  While the Court notes that Plaintiff's

[37] Motion to Support Payment of Other Litigation Cost [sic] of Judgment[1] is still pending

---

[1]  While Plaintiff's Motion is entitled [37] Plaintiff's Motion in Support of Plaintiff's
Summary Judgment and Motion to Support Payment of Other Litigation Cost [sic] of Judgment,
Plaintiff's [37] Motion is in fact a Reply to his Summary Judgment Motion (in addition to being
a Motion for Costs) and the Court shall construe it as such.

before the Court, the Court shall address the issues raised therein when the Court makes a

decision on the merits of the case upon receipt of further briefing and a status report.

## I: BACKGROUND

As an initial matter, the Court notes that there is no real dispute regarding the material

facts in this case, as the Parties rely on the same FOIA-request related documents in support of

their respective positions.  While Defendant attached a complete set of such documents to its

summary judgment motion, and Plaintiff attached a partial set to his summary judgment motion

(and in various other filings), the Court shall cite to the set attached to Plaintiff's Complaint for

clarity.

### A.    Agency Requests

On April 24, 2004, Plaintiff submitted a request to the Department of Justice pursuant to

FOIA and the Privacy Act.  Plaintiff generally requested "full disclosure and release of all

records and/or data contained in the files of your agency, and specifically under my name and/or

an identifier assigned to my name."  Compl., Ex. 1 at 1 (April 2004 Request).  Plaintiff

specifically requested:

> 1) Any scientific informating [sic] finding's [sic] maintained by your office as to physical
> evidence [(]including but not limited to knife[)] recovered from the crime scene in case
> #F1386-96.  Any and all report's [sic] or Evidentiary findings of fiber and blood sample's
> [sic] received by Evidence Technician, Connie Hickman[.]
>
> 2) Any deals, agreement's [sic], inducements or promise's [sic] made to any person's
> [sic], witness's [sic] or stand by witness's [sic] relating to case # F-1386-96.
>
> 3) Any statement's [sic] made by any person's [sic], witness's [sic] or stand by witness's
> [sic] that is in the possession of the United States Attorney's Office or it's [sic]
> employee's [sic] relating to case # F1386-96.
>
> 4) Any investigation and/or investigatory reports, obtained by the United State's [sic]

Attorney's Office relating to case #F1386-96.

5) Final and closing investigation report's [sic] as to case #F1386-96.

6) Any and all information, data or reports not otherwise exempt by statute . . . or law. . . .

7). The information, records with dollar amounts of all witnesses including expert witnesses, friends, relatives, and standby witnesses who were paid with Government vouchers in case No. F1386-96. . . .

8). All information and records relating to any social visits by–the U.S. Attorneys [sic] Office to any witness incarcerated or otherwise, than visits that took place in normal course of prison or jail operations. . . . [sic]

. . .

*Id.* at 2-3. Plaintiff further indicated that "[i]f it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release." *Id*. at 4.

On May 28, 2004, Ronald L. Deacon, Director of the Facilities and Administrative Service Staff of the Justice Management Division of the Department of Justice, sent Plaintiff a letter stating that Plaintiff's April 2004 request had been received, and further requesting that Plaintiff "send the enclosed Certification of Identity . . . with a request for records directly to the component(s) you have selected . . . ." Compl., Ex. 2 at 1 (May 2004 DOJ Response). On July 21, 2004, Plaintiff resubmitted his initial request along with a Certification of Identity. Compl., Ex. 3 at 1 (July 2004 Re-Request).

In a letter dated July 26, 2004, Marie A. O'Rourke, Assistant Director of the EOUSA Freedom of Information/Privacy Act Unit, indicated to Plaintiff that his request had been received and assigned the Request Number 04-2434 and would be placed in order for processing, further explaining that "Project Requests," which include requests for "all information about

myself in criminal case files," take up to nine months to process. Compl., Ex. 4 at 1 (July 2004

EOUSA Response). The letter stated that "[i]f you have made such a request, you may either

write us and narrow your request for specific items, or you may expect that the processing of

your request may take nine months from the date of this letter." *Id*. The letter further indicated

that Plaintiff's "request for accounting is denied because United States Attorney criminal case

files are exempt from the accounting provisions of 5 U.S.C. § 522c(1) by virtue of 5 U.S.C. §§

552a(j) and (k). You may appeal my decision in this matter by a written request received within

60 days of the date of this letter." *Id*. at 2. Ms. O'Rourke sent a second letter to Plaintiff on

September 16, 2004, stating that "[d]ue to the large number of requests received by the Executive

Office for United States Attorneys and the limited resources available to process such requests,

this office has been unable to process your request as of this date." Compl., Ex. 6 at 1 (Sept.

2004 EOUSA Response). This second letter further indicated that Plaintiff could appeal this

decision with respect to the delayed processing of Plaintiff's request. *Id.*

   Plaintiff sent a titled "Administrative Appeal" in response to the July 2004 EOUSA

Response (and presumably before he received the September 2004 EOUSA Response) on

September 15, 2004, indicating that Plaintiff understood the July 2004 Response to be a denial of

his request. Compl., Ex. 5 at 1 (Sept. 2004 Appeal). After receiving Plaintiff's September 2004

Appeal, Richard L. Huff, Co-Director at the Office of Information and Privacy (OIP) sent

Plaintiff a letter dated November 3, 2004, indicating that OIP had notified EOUSA of Plaintiff's

September 15, 2004 letter. Compl., Ex. 7 at 1 (November 2004 OIP Letter). Mr. Huff indicated

to Plaintiff in his letter that "[i]t is my understanding that the EOUSA is still processing your

request. Although the Act authorizes you to treat the failure of the EOUSA to act on your

4

request within the specified time limit as a denial thereof, this Office, because it lacks the

personnel resources to conduct the record reviews that are necessary to make initial

determinations on requests for records, cannot act until there has been an initial determination by

the EOUSA." *Id*. Mr. Huff further indicated that Plaintiff could either appeal again to OIP when

EOUSA completed its action with respect to his particular request, or, if Plaintiff had not

received a response from EOUSA at the time he received Mr. Huff's letter, could treat said letter

as a denial of his request for appeal and file suit in federal court. *Id*.

     Plaintiff chose to file a second FOIA/Privacy Act request on November 15, 2004.

Compl., Ex. 8 (November 2004 Request). Plaintiff defines this request as a "specified request"

"to check witnesses payment vouchers" in order "to ascertain whether public money was

properly expended in MY criminal case F1386-96 United States v. Vyron Wheeler." *Id*. at 2.

Plaintiff's November 2004 request asks only for "[t]he information, records with dollar amounts

of all witnesses, including expert witnesses, friends, relatives of and standby witnesses who were

paid with Government payment vouchers in case No. F1386-96 United States vs. Vyron

Wheeler." *Id*. at 3. Plaintiff further indicates that "[i]f it should be determined that any material

be deemed CONFIDENTIAL due to identity of source, the permission is granted to Agency to

delete source identification "ONLY" from the material for release . . . ." *Id*. at 3-4.

     The EOUSA response most key to the present posture of the case is a letter dated

December 21, 2004, sent from Ms. O'Rourke to Plaintiff. Compl., Ex. 9 (December 2004

EOUSA Denial). This letter indicated that Plaintiff's second "specified" request had been

received and given a distinct request number–04-4515. The EOUSA indicated that the nature of

Plaintiff's request as a request for third-party documents precluded the EOUSA from conducting

a search for such documents entirely: "Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." *Id*. at 1. The letter indicated that absent a release, death certificate, or public justification, release of such records would violate the Privacy Act, 5 U.S.C. § 552a, and such documents would be exempt from disclosure pursuant to Exemptions 6 and 7(C) of FOIA. *Id.* Finally, the letter provided what is known as a "Glomar" response to Plaintiff, refusing to confirm or deny the existence of responsive records, stating "We have not performed a search for records and you must not assume that records concerning a third party exist." *Id.* Plaintiff was informed therein of his right to appeal to OIP. *Id.* at 2.

On January 28, 2005, Plaintiff submitted an appeal of EOUSA's December 2004 Denial to OIP. Compl., Ex. 10 at 1 (January 2005 Appeal). Plaintiff somewhat confusingly indicated in his January 2005 Appeal that he had received a response from EOUSA to his "updated second request my first request for this information dated April 24, 2004 was denied pursuant to the Law Enforcement provision of the FOI/PA Act sec., 5 U.S.C. on July 26, 2004 by your office. [sic]" *Id.* at 1. In his January 2005 Appeal, Plaintiff specifically stated as follows with respect to the witness information requested:

> I fully agree that private personal information can be harmful and in some cases should not be released e.g. [names, addresses, phone no., soc. sec. no, signatures and other identifying information or symbles [sic] in some cases] but as specified on pp.2 of my FOI. I state your agency may delete source information.
> I'm not interested in the witnesses information only in the amount paid by stipen/voucher. . . . [sic]

6

*Id.* at 1-2.  Plaintiff provided an example in his appeal of the information he is requesting,

clarifying that he specifically requests the date, reason, and amount with respect to each voucher

payment made.  *Id.* at 6-7.  Plaintiff further discussed Defendant's duty to segregate material for

disclosure that does not fall within one of the FOIA exemptions.  *Id.* at 2.  Furthermore, Plaintiff

made arguments with respect to the public interest in disclosing the information he

requests–Plaintiff cited public interest in knowing about possible prosecutorial misbehavior with

respect to witnesses.  *Id.* at 3.  Plaintiff stated that his "suspician [sic] as to your agency

concerning witness payment has been hightened [sic] by articles appearing in the NewPaper [sic],

"Washington Post" and the "USA TODAY," which he attached to his appeal.  *Id.* at 8, 9.  OIP

sent letters to Plaintiff on February 14, 2005, and April 7, 2005, respectively assigning Plaintiff's

request an appeal number and indicating that his appeal would be subject to further delay.

Compl., Exs. 11 (Feb. 2005 Response) and 12 (April 2005 Response).  On October 24, 2005,

after Plaintiff filed his Complaint, OIP sent a letter to Plaintiff indicating that his appeal file was

being closed, because "[i]nasmuch as this matter is now before the Court, any action by this

Office would be inappropriate."  Def.'s Mem. Summ. Judg., Ex. K (Oct. 2005 OIP Letter).

     B.    *Procedural History*

     Plaintiff filed the instant Complaint against Defendant on June 7, 2005, requesting relief

pursuant to FOIA and the Privacy Act.[2]  Compl. at 1, 7.  In his Statement of Claim, Plaintiff

notes that his November 2004 Request, "was made to protect unwarranted invasion of privacy, to

protect third party information and confidentiality of private persons.  This is the common goal of

---

    [2]  While *pro se* Plaintiff states that his action is brought pursuant to 42 U.S.C. § 1983 to gain civil relief under both FOIA and the Privacy Act, the Court shall properly construe his claim as brought pursuant directly under FOIA and the Privacy Act.

every statute cited by (EOUSA) [referencing Exemption (6) and (7)(C)]."  Compl. at 5.  Plaintiff further mentions Defendant's duty to release material that is segregable from that protected under the FOIA exemptions.  *Id.*  The specific relief Plaintiff requests from the Court includes "production of the sought records,"[3] attorneys fees and other litigation costs.  *Id.* at 8.

On November 28, 2005, Defendant filed a Motion for Summary Judgment.  Defendant discerned Plaintiff's Complaint to relate to the witness payment vouchers requested in his November 2004 Request.  *See* Def.'s Mem. Summ. Judg. at 1 ("Relevant here, plaintiff requested information on witnesses' payment vouchers related to his trial.").  Defendant argues that it should be granted summary judgment because "[s]pecifically, plaintiff failed to submit releases from the third parties who are the subject of his FOIA request and failed to present a public interest argument favoring disclosure notwithstanding third party privacy interests."  Simply restating the standards found in the Privacy Act as well as those pertaining to Exemptions 6 and 7(C) of FOIA, Defendant states that "[a]lthough plaintiff seems to suggest that there is a public interest in releasing witnesses' payment vouchers (i.e., to provide information on how the government spends it funds), it is evident that plaintiff wants the information for personal interests because he only seeks those documents related to his criminal case."  *Id.* at 7.  As such, and because "plaintiff has not followed the proper procedures in making a third-party FOIA request," Defendant argues that summary judgment should be granted in favor of Defendant.  *Id.*  Notably, Defendant never addresses the fact that Plaintiff requests documents with the explicit instruction that Defendant may redact third-party information.  Nor does Defendant provide any

---

[3] "In his July & April [FOIA] request also in the more specified request submitted on Nov <u>15</u> 04 inwhich [sic] plaintiff requested witness payment vouchers. [sic]"  Compl. at 8.

justification, explicit or otherwise, for its "Glomar" response in its December 2004 Denial of

Plaintiff's November 2004 Request and Defendant's consequent failure to undertake any sort of

search for documents.  The attached Declaration of David Luczynski, Attorney Advisor with the

EOUSA, states only the following with respect to the EOUSA's "Glomar" response: "Plaintiff

has not provided this office with any authorization or consents from the third persons which

would permit EOUSA to release their names or identifying information which is why EOUSA

has refused to confirm or deny to Plaintiff the existence of such records."  *Id.*, Luczynski Decl. at

4.

On January 30, 2006, Plaintiff filed an Opposition to Defendant's Motion for Summary

Judgment.  In his Opposition, Plaintiff argues that 1) Defendant never provided documents to

Plaintiff pursuant to his July 2004 Re-Request, which he "has never disregarded"; 2) Defendant

has not provided a detailed justification to satisfy its burden as to why the exemptions invoked

are relevant; and 3) Defendant has demonstrated that releasing the documents would be in the

public interest in exposing government misconduct.  Pls.' Opp'n at 1-5.  In his attached

"Statement of Disputed Issues," and "Declaration," Plaintiff also reiterates that his requests ask

for documents with source information redacted:

> Plaintiff declares, he does not wish to envade [sic] upon any person's privacy, and
> has gone to great extent not to invade these privacies.  Plaintiff did not provide a "express
> authorization form from any Third Party, [sic] because he does not seek any personal
> information of Third Parties. . . .
> . . .
> Plaintiff declare's [sic] that his request should not even be classified as "Third
> Party" because "deleting" "third party" information will leave the sought after
> information.

Pl.'s Opp'n, Pl.'s Decl. ¶¶ 18, 22.  On January 31, 2006, Plaintiff also filed a Cross-Motion for

Summary Judgment, wherein Plaintiff re-articulates the arguments made in his Opposition to Defendant's Motion for Summary Judgment. Plaintiff distinguishes his case from *Burke v. U.S. Dep't of Justice*, Civ. No. 96-1739, 1999 WL 1032814 (D.D.C. Sept. 30, 1999), in which the court upheld an agency "Glomar" response, stating that "Plaintiff's case is different from Burke in the [sic] since that he alleges the Public Interest [sic] in disclosure required, a history of [government] misconduct, and request the DELETING of confidential private information. Thus, there will be no embarrasing [sic] or stigmatizing effect with disclosure." Pl.'s Mot. Summ. Judg. at 7.

On February 24, 2006, Defendant filed a Reply to its Motion for Summary Judgment and an Opposition to Plaintiff's Cross-Motion. Defendant states that the EOUSA had interpreted Plaintiff's November 2004 request to "supersed[e] and narro[w] the scope of the first request," but upon learning otherwise in Plaintiff's Cross-Motion, converts its own Motion for Summary Judgment to a Partial Motion for Summary Judgment addressing only Plaintiff's November 2004 Request. Def.'s Reply/Opp'n at 1, 2, n.2. "[G]iven Plaintiff's clear indication that he remains interested in receiving documents in response to his initial FOIA request, Defendant will undertake a thorough search for records. . . . Defendant respectfully requests thirty days to search for records, and thirty days for the Executive Office of the United States Attorneys to review and process the records (if responsive records are found), and to release any responsive, non-exempt records to Plaintiff." *Id.* at 4-5. With respect to the witness vouchers, Defendant continues to rely upon its prior argument that "Plaintiff failed to present either a third party waiver/proof of death document or a legally-sufficient public interest argument that disclosure of the records at issue outweigh [sic] the privacy interest in those records." *Id.* at 2. Defendant again does not

10

provide justification for its "Glomar" response, even in light of Plaintiff's request for redacted documents.

In his Reply to his Cross-Motion for Summary Judgment, Plaintiff states that Defendant's failure to act on Plaintiff's first document request was "unreasonable," and reiterates Defendant's duty to release reasonably segregable portions of third-party documents.  Reply at 1, 3.

## II: LEGAL STANDARD

*A.     Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986). To be material, the factual assertion must be capable of affecting the

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. 2505

(internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are

insufficient to defeat an otherwise proper motion for summary judgment." *Williams v.

Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead,

while the movant bears the initial responsibility of identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant

to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587,

106 S. Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

      B.     *FOIA*

      Congress enacted FOIA for the purpose of introducing transparency to government

activities. *See Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive,

however, to the need to achieve balance between this objective and the vulnerability of

"legitimate governmental and private interests [that] could be harmed by release of certain types

of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871,

872 (D.C. Cir. 1992) (internal quotation and citation omitted); *see also Summers v. Dep't of

Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998).  Accordingly, FOIA provides nine exemptions

pursuant to which an agency may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B),

(b)(1)-(9).

     The Court reviews an agency's refusal to disclose requested documents *de novo*.  *See* 5

U.S.C. § 552(a)(4)(B).  Generally, when summary judgment is requested in a FOIA matter, the

agency bears the burden of showing that a FOIA exemption applies.  *Smith v. U.S. Dep't of

Justice,* 251 F.3d 1047, 1050 (D.C. Cir. 2001).  To satisfy this burden, the agency may provide a

plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state

which exemption the agency claims for each withheld document, and explain the exemption's

relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also

Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, the agency's accompanying

affidavits or declarations must describe "the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor evidence of

agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These

affidavits may be submitted by an official who coordinated the search, and need not be from each

individual who participated in the search.  *See SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197,

1200 (D.C. Cir. 1991).  Courts must "accord substantial weight" to an agency's affidavit

regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. U.S. Dep't of

Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823, 115 S. Ct. 86, 130 L. Ed. 2d

38 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'")
(quoting *SafeCard Servs.*, 926 F.2d at 1200).

In determining the adequacy of a FOIA search, an agency must show that it "has
conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S.
Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotation marks and citation
omitted). If the plaintiff questions the adequacy of a search for documents made by the agency,
"the factual question it raises is whether the search was reasonably calculated to discover the
requested documents, not whether it actually uncovered every document extant." *SafeCard
Servs.*, 926 F.2d at 1201. The agency affidavits used to establish the adequacy of a search "must
be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" *Id.* at 1200
(quoting *Grounds Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and
quotation marks omitted)).

While the agency may withhold valid materials under a specific exemption to FOIA, it
must release "any reasonably segregable portion[s]" once it has redacted the exempted
information. 5 U.S.C. § 552(b). After all, FOIA allows for the release and review of
"information, not documents." *See Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992).
The agency must detail what proportion of the information in a document is non-exempt and how
that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the
Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably
segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79
F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are required to consider
segregability issues even when the parties have not specifically raised such claims. *Trans-Pacific*

14

*Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The Court has a duty to put forth a segregability analysis, even if *sue sponte*. *See Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000). To fail in that duty would be error. *See Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (citing *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). This Circuit has long held that non-exempt information may only be withheld if it is "inextricably intertwined" with exempt information. *Trans-Pacific*, 177 F.3d at 1027 (quoting *Mead Data*, 566 F.2d at 260). To ascertain whether the withheld information may be segregated, the Court relies on the *Vaughn* index and supporting documents to the extent that they provide specific answers as to what information was withheld and why that information cannot be reproduced with redactions. *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998); *Animal Legal Defense Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999). Conclusory answers merely parroting the statutory language are not sufficient. *Id.*

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001), *aff'd*, 38 Fed. Appx. 20 (D.C. Cir. May 1, 2002) (citing *Laningham*, 813 F.2d at 1241). Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents. *See Perry-Torres v. U.S. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2

(D.D.C. Mar. 6, 2001)).

      *C.*     *The Privacy Act*

      The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of an individual's personal information by agencies located within the federal government. *See* 5 U.S.C. § 552a(e). The Act provides that any agency that retains a system of records "shall maintain . . . only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or executive order of the President." 5 U.S.C. § 552a(e)(1). To provide for openness and accountability, the Act ensures that "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system," the agency shall provide the individual with access to review such records. 5 U.S.C. § 552a(d)(1). Finally, subject to certain exceptions, the Privacy Act states that disclosure of records shall be limited. 5 U.S.C. § 552a(b) ("[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains"). One of these exceptions, however, is that an agency shall disclose such records that would be required to be disclosed pursuant to FOIA. 5 U.S.C. § 552a(b)(2). In actions seeking documents under both FOIA and the Privacy Act, a defendant agency must show that the information is properly subject to both FOIA and Privacy Act exemptions. *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

## III:  DISCUSSION

      *A.*     *Plaintiff's Request for Witness Voucher Payment Information*

16

Defendants, in their Motion for Summary Judgment and December 21, 2004 Denial, cite to the Privacy Act, 5 U.S.C. § 552a, and Exemptions 6 and 7(C) of FOIA as the bases for their non-disclosure of the documents requested by Plaintiff in his November 2004 "specified" request. Pursuant to the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains"–unless such records would be required to be disclosed pursuant to FOIA. 5 U.S.C. § 552a(b), (b)(2). Thus, the relevant inquiry in this case is whether the documents requested by Plaintiff fall within either of the Exemptions claimed by Defendant–namely, Exemption 6 and/or Exemption 7(C).

In withholding documents pursuant to Exemption 6, 5 U.S.C. § 552(b)(6), an agency must balance the public's interest in disclosure with the privacy interest of an individual since it allows the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773-75, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989). Exemption 6 protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, the exemption was intended to cover detailed Government records on an individual which can be

identified as applying to that individual." (internal quotation and citation omitted)).  Courts have broadly interpreted the term "similar files" to include most information applying to a particular individual.  *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 296 (D.D.C. 2005).  It is not the nature of the files in which the information was contained, but the balance of public and private interests that determines the exemption's scope.  *Washington Post*, 456 U.S. at 599-600, 102 S. Ct. 1957.

Pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption 7C"), an agency may similarly withhold documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  A similar privacy interest versus public benefit calculation applies with respect to this exemption.  An evaluation of the public interest in disclosure under Exemptions 6 and 7(C) hangs on whether disclosure would reveal any direct information about the conduct of the agency, that is, whether the information "sheds light on an agency's performance of its statutory duties."  *Reporters Comm.*, 489 U.S. at 773, 109 S. Ct. 1468.  Courts in this Circuit have followed *Reporter's Committee* in approving a categorical approach to denying disclosure of law enforcement records when the request for records seeks no information on an agency's conduct.  *See Reporters Committee*, 489 U.S. at 780; *SafeCard*, 926 F.2d at 1206.  In *SafeCard*, pursuant to Exemption 7(C), the SEC redacted names and addresses of third parties from witness interviews pertaining to the SafeCard investigation.  *See SafeCard*, 926 F.2d at 1205.  The court confirmed the categorical approach suggested in *Reporters Committee*, holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is

18

engaged in illegal activity, such information is exempt from disclosure." *Id.* at 1206.

However, the nature of Defendant's response to Plaintiff's November 15, 2004 request makes analysis of Defendant's possible withholding of documents pursuant to the aforementioned exemptions premature at this point. Defendant, rather than conducting a search for the witness payment voucher information requested by Plaintiff and withholding either portions of responsive documents or responsive documents in their entirety pursuant to such exemptions, instead provided Plaintiff with a "Glomar" response in refusing to search for such records and denying the existence or non-existence of the same. *See Phillippi v. CIA*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (the CIA refused to confirm or deny the existence of the secret "Glomar Explorer.").

Defendant provides no adequate justification (or really any justification at all) for its use of a "Glomar" response in responding to Plaintiff's November 2004 Request. *See McNamera v. Dep't of Justice*, 974 F. Supp. 946, 957 (W.D. Tex. 1997) ("[I]f the affidavit asserting the "Glomar response" is inadequate, i.e., if the affidavit does not set forth the reasons why the "Glomar response" is appropriate, or if the FOIA request seeks information that could shed light on agency action, the court has a duty to undertake a further inquiry and to balance the two competing interests."). In fact, the United States Attorney's Office, which serves as counsel for the government in the instant case, recently iterated in another case before this Court the necessity of the government *explaining* why a "Glomar" response is adequate: "Where the agency responds that it can neither confirm nor deny the existence of responsive records, however, courts do not require a detailed listing of the responsive records, but instead require a publicly filed affidavit or declaration *with a detailed explanation* of why the "Glomar" response

19

is necessary to support the agency's claim of a FOIA exemption from release." *Lowe v. DEA*, Civ. No. 06–1133, slip [5] ("Defendant's Motion to Dismiss") (D.D.C. Sept. 1, 2006) (emphasis added).  Such explanation was not provided by the government in the instant case.

The Court notes that cases upholding an agency's "Glomar" response can be distinguished from the instant case in that they involve a plaintiff requesting documents with respect *to a particular individual*, whereas in the instant case, Plaintiff's November 2004 request for documents is for witness voucher payments *generally* with all information related to the particular individuals redacted.  This policy is iterated in *Nation Magazine*, wherein the instant circuit articulated that "[u]nder [Exemption 7(C)], a Glomar response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records *would associate the individual named in the request* with criminal activity." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (emphasis added).  Cases in which a "Glomar" response has been deemed appropriate involve document requests naming a particular individual or individuals as the subject of such a request. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (holding that an agency's "Glomar" response was proper pursuant to FOIA Exemptions 6 and 7(C) in responding to plaintiff's request for records pertaining to two specific DEA agents); *Taylor v. Dep't of Justice*, 257 F. Supp. 2d 101 (D.D.C. 2003) (holding that a plaintiff seeking FBI records pertaining to specific individual related to his criminal conviction was properly issued a "Glomar" response); *Burke*, 1999 WL 1032814 (same); *Tanks v. Huff*, Civ. No. 95-568, 1996 US DIST LEXIS 7266, *13 (D.D.C. May 28, 1996) (same). *See also Jefferson v. Dep't of Justice*, Civ. No. 01-1418, slip op. [70] (D.D.C. Nov. 14, 2003), *aff'd in rel. part*, 168 Fed. Appx. 448,

2005 WL 3783023 (D.C. Cir. Oct. 26, 2005) (holding that the agency's "Glomar" response was appropriate when faced with an information request directed at information concerning a particular individual and where the agency provided an explanation for said response). In *Enzinna v. United States Dep't of Justice*, Civ. No. 97-5078, 1997 WL 404327, *1-2 (D.C. Cir. June 30, 1997) (per curiam), the instant circuit upheld the government's "Glomar" response (and corresponding failure to engage in a segregability analysis) with respect to the disclosure of documents related to witnesses' participation in the Federal Witness Protection Program, holding that "[i]t was not necessary for the district court to perform a segregability analysis. The very limited information which entered the public domain, *i.e.*, the fact of the witnesses' participation in the WPP at the time of trial, would be inextricably intertwined with other, protected information." However, in the instant case, where Plaintiff does not style his request by witness name, nor does he require the inclusion of witness names or any other personal information, it is unclear to the Court absent any explanation from the government why the information requested by Plaintiff–witness voucher fee payment amounts coupled with dates and purposes (i.e. for testimony or transportation)–would necessarily implicate particular witnesses associated with his criminal case or be inextricably intertwined with protected information.

The Court also notes that EOUSA's implementing regulations do not *require* Plaintiff to submit a third-party release or other information upon making his request for documents related to a third party. Pursuant to 28 C.F.R. § 16.3 ("Requirements for making requests"), "If you are making a request for records about another individual, either a written authorization signed by that individual permitting disclosure of those records to you or proof that that individual is deceased . . . *will help the processing* of your request." 28 C.F.R. § 16.3 (emphasis added).

21

Finally, while it is clear that Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those individuals mentioned in connection therewith, *see Reporters Committee*, 489 U.S. at 773–75, 109 S. Ct. 1468; *SafeCard Servs.*, 926 F.2d at 1205-06, it is not clear to the Court that the narrow information specifically requested by Plaintiff would be subject to either Exemption 6 or Exemption 7(C) in light of the FOIA-mandated segregability requirement. *See Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2001) ("Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears; any non-exempt information must be segregated and released, *see* 5 U.S.C. § 552(b), unless the 'exempt and nonexempt information are "inextricably intertwined," such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.' *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)."). The Court acknowledges the danger inherent in the release of identifying information about witnesses and other third parties associated with criminal cases. *See Meserve v. Dep't of Justice*, Civ. No. 04-1844, 2006 WL 2366427, at *5 (D.D.C. Aug. 14, 2006) ("Release of such information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them, perhaps leading to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case." (internal quotation marks and citation omitted)). The Court also recognizes that *identifying* witness information is usually exempt from disclosure pursuant to Exemptions 6 and/or 7(C). *See Fitzgibbon v. CIA*, 911 F.2d 755, 767-68 (D.C. Cir. 1990); *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996)

("records contain[ing] the names of informants, witnesses, and potential suspects who are relevant to [a] criminal investigation . . . clearly fall within the scope of Exemption 7(C)."). *See also Linn v. U.S. Dep't of Justice*, Civ. No. 92-1406, 1995 US DIST LEXIS 9302, at *93-96 (D.D.C. June 6, 1995) (upholding withholding of witness voucher information pursuant to Exemptions 6 and 7(C)). However, as stated above, it is not clear to the Court, absent any explanation from the government, how the information requested by Plaintiff could be used to identify particular witnesses such that the witness voucher fee payments amounts and purposes could not be reasonably segregated and provided to Plaintiff.

In sum, absent any explanation from the EOUSA as to why a "Glomar" response is appropriate in this case such that the EOUSA would not be obligated to search for the records requested in Plaintiff's November 2004 Request, and absent any explanation from the EOUSA as to why segregating identifying third-party information in the witness vouchers from the non-identifying information would insufficiently protect the third-party interests implicated under Exemptions 6 and 7(C), the Court presently has insufficient information in order to make a determination with respect to the non-search for and non-release of documents pertaining to said request.

  B.  *Plaintiff's Initial Request for All Documents Related to his Criminal Case*

The Court concludes that Defendant's confusion with respect to the duplicative or superceding nature of Plaintiff's second "specified" request for documents was not unfounded. While an agency is obligated "to construe a FOIA request liberally," *Nation Magazine*, 71 F.3d 890, Plaintiff's November 2004 Request, self-defined as a "specified request," reasonably could be construed either as superseding or as concurrent to Plaintiff's initial request. The Court will

not infer, as Plaintiff suggests, that Defendant acted in bad faith in not responding to Plaintiff's
April/July 2004 Request, particularly in light of Defendant's stated willingness to respond to
Plaintiff's initial request upon understanding that Plaintiff did not intend for it to be superceded
by his November 2004 Request.  In light of Defendant's indication as of February 24, 2006, that
"Defendant will undertake a thorough search for records. . . . Defendant respectfully requests
thirty days to search for records, and thirty days for the Executive Office of the United States
Attorneys to review and process the records (if responsive records are found), and to release any
responsive, non-exempt records to Plaintiff," Def.'s Reply/Opp'n at 4-5, the Court shall order
that Defendant file a status report with the Court indicating whether or not it has complied with
its long-past self-stated deadline.  Assuming that Defendant has provided documents to Plaintiff,
the Court shall also order that Defendant file a *Vaughn* index with respect to Plaintiff's request
for documents relating to himself, and a dispositive motion if appropriate.

## IV:  CONCLUSION

Based on the aforementioned reasoning, the Court shall DENY WITHOUT PREJUDICE
Defendant's [19] Motion for Summary Judgment, and HOLD IN ABEYANCE [35] Plaintiff's
Motion for Summary Judgment.  The Court orders that the Defendant file a brief and
accompanying affidavit(s) by October 6, 2006, addressing why a "Glomar" response was an
adequate response to Plaintiff's request for witness voucher documents with third-party
information such as names, addresses, and other identifying information redacted from such
payment statements.  Furthermore, the Court orders that Defendant include discussion in its brief
as to why Plaintiff's request for the aforementioned information coupled with Defendant's duty
to segregate exempt from non-exempt agency materials does not require disclosure of the

24

requested information as beyond the scope of 5 U.S.C. § 552(b)(6) and (b)(7)(C).  Plaintiff must

file any Response by October 27, 2006.  With respect to Plaintiff's initial request for all

documents related to his criminal case, the Court orders that Defendant submit a status report to

the Court by October 6, 2006, indicating whether or not and to what degree it has fulfilled

Plaintiff's request, further setting out a schedule to provide a *Vaughn* index to the Court with

respect to any withheld or redacted documents and a dispositive motion if appropriate.  An

appropriate Order accompanies this Memorandum Opinion.


Date:   September 18, 2006


                                               _/s/_____
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge