```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
```

VYRON WHEELER,                              )
                                            )
        Plaintiff                           )
                                            )
   v.                                       ) Civil Action No. 05-1133(CKK)
                                            )
EXECUTIVE OFFICE FOR THE U.S. ATTORNEYS,    )
                                            )
        Defendant.                          )
_____)

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's March 17, 2007 Minute Order, Defendant respectfully submits this supplemental memorandum in support of its Motion for Summary Judgment. The memorandum addresses the second search for records undertaken by Defendant in response to Plaintiff's Freedom of Information Act ("FOIA") request for records on himself including those documenting possible witness payments connected to Plaintiff's criminal trial. See R. 58, Defendant's Reply to Plaintiff's Opposition to Defendant's November 22, 2006 Motion for Summary Judgment and Response To Plaintiff's Pending Motion for Summary Judgment, pp. 2-3.

As a result of this second search, additional records were found and, with the exception of information properly redacted and withheld under the FOIA, 5 U.S.C. § 552 (b)(2), (b)(5) and (b)(7)(C), responsive records were released to Plaintiff. Accordingly, Defendant Executive Office for the U.S. Attorneys

("EOUSA") reiterates its request for summary judgment in its favor.

## I. BACKGROUND

### A. The Search for Records

The search for responsive records is explained in detail in the declaration of Susan Bowman, Supervisory Operations Specialist for the Superior Court Division, United States Attorney's Office ("USAO") for the District of Columbia, who, because of her official duties, has firsthand knowledge of the procedures that were followed in processing Plaintiff's FOIA request. Def.'s Ex. 5, Declaration of Susan Bowman, ¶¶ 1-2 (March 23, 2007)(attached hereto).

In March 2006, Ms. Bowman received Plaintiff's FOIA request from the EOUSA. Id. ¶ 3. The Superior Court for the District of Columbia has a computerized docketing/case management system known as the Court Information System ("CIS"). Id. ¶ 4. This computerized system of records ("RCIS") was replicated by the USAO for the District of Columbia to track cases or matters for the USAO's Superior Court Division. Id. Whenever a new matter or case is opened, the Division's Superior Court numbering section will enter applicable information into the CIS computer system and assign the case or matter a case number which will be used as an internal tracking number for the office. Id. The information entered into the computer is based on a series of individual

records that are linked together, or related, or in logical order.  Id.  These records may include, but are not limited to, the names of the parties, the names of related cases, a description of the case, the name of the Assistant United States Attorney handling the case, the name of the Court in which the case is filed, and the case status. Id.

The RCIS is the current computerized records tracking system available and used by the Superior Court Division.  Id. ¶ 6.  The RCIS allows the user to search Superior Court Division matters by specific names.  Id.  The RCIS is capable of cross-referencing other related cases if such related case information is entered into the system.  Id.  Due to the large number of files maintained by the Office (in excess of 70,000 files of which over 10,000 are active and 60,000 are closed files), any search for case related documents must be performed using RCIS.  Id. A purely manual search for specific files/documents would be so burdensome as to be virtually impossible for the USAO for the District of Columbia.  Id.  Moreover, files are closed on a timely basis and such records are shipped periodically to the Federal Records Center in Suitland, Maryland where they are maintained for a specified number of years (typically ten years). Id.

In a prior declaration submitted regarding Plaintiff's FOIA request, it was noted that the Public Access to Court Electronic

Records ("PACER") and the Legal Information Office Network System ("LIONS") were used in searching for responsive records. See R. 48, Defendant's Response to the Court's September 18, 2006 Order and Defendant's Motion for Summary Judgment, Ex. 3, Declaration of David Luczynksi, ¶ 5 (Nov. 6, 2006). This information was submitted in error, because, as to both searches done by Ms. Bowman, RCIS and the Closed Files Information Tracking System ("CFITS") were used.[1]  Ex. 5, Bowman Decl. ¶ 7.

In or about April 2006, Ms. Bowman performed a search on RCIS for all cases related to Vyron Wheeler. Id. ¶ 8. As a result of the search, Ms. Bowman requested the Closed Files Section in the USAO to order the Wheeler case file from the Federal Records Center in Suitland, Maryland. Id. Upon receipt of the boxes, Ms. Bowman copied documents and forwarded the documents to the EOUSA for further processing. Id.

Additionally, Ms. Bowman consulted with Assistant U.S. Attorney Teresa Howie, the prosecutor in Plaintiff's criminal case, to determine whether Ms. Howie had any documents related to the case in her possession. Id. ¶ 9. Ms. Bowman forwarded

---

[1] The CFITS system is the current computerized record tracking system that is available and used by the Superior Court Division to locate closed files. Id. The CFITS allows the user to search Superior Court Division matters by specific names. The CFITS is capable of cross-referencing other related case information entered into the system. Id.

copies of records responsive to Plaintiff's FOIA request to EOUSA for further processing.  Id.

In or around March 2007, a second search was undertaken to locate records responsive to Plaintiff's FOIA request.  Id. ¶ 10. On March 7, 2007, Ms. Bowman for a second time requested the Closed Files Section of the USAO for the District of Columbia to re-order the closed files from the Federal Records Center.  Id. ¶ 11.  On March 8, 2007, the Federal Records Center delivered two boxes to the Superior Court Division relating to Plaintiff.  Id. ¶ 12.  Ms. Bowman copied all of the responsive documents in the boxes and forwarded them to the EOUSA for further processing.[2] Id. ¶ 13.

On March 23, 2007, Ms. Bowman contacted Assistant U.S. Attorney Howie to clarify whether she had any email or other electronic media referencing Vyron Wheeler.  Id. ¶ 14.  That same day, Ms. Howie responded that she had no emails or other electronic media referencing Plaintiff.   Id.

**B.   Processing of Responsive Records**

In addition to records released previously to Plaintiff (see R. 48, Def.'s Response to the Court's September 18, 2006 Order

---

[2]During the first search, Ms. Bowman provided responsive documents that did not note personal information, i.e., names, to the EOUSA.  Ex. 5, Bowman Decl. ¶ 13.  As a result, only 126 pages were initially forwarded to the EOUSA for processing.  As to Ms. Bowman's second search, she forwarded all responsive documents to the EOUSA for processing. Id. ¶ 14.

and Def.'s Mot. Summ. J., Ex. 3, Luczynksi Decl. ¶ 2), the EOUSA, as a result of the second search, released to Plaintiff an additional 315 pages in full and 80 pages with redactions, and has withheld in full 266 pages of records.  Ex. 6, Supplemental Declaration of David Luczynksi, ¶ 2 (April 9, 2007)(attached hereto).  Additionally, the EOUSA developed a supplemental declaration pursuant to and consistent with Vaughn v. Rosen, 484 F.2d 820 (D.D.C. 1973) explaining its decisions to withhold certain information from public disclosure.  Id. ¶ 7.  Specifically, the EOUSA applied 5 U.S.C. § 552 (b)(2), (b)(5) and (b)(7)(C) to withhold exempt information.[3]  The propriety of the EOUSA's decision is explained below.

**II.   ARGUMENT**

    **A.   The Adequacy of EOUSA's Search.**

The standard of review for determining the adequacy of a search in response to a FOIA request was presented in Defendant's

---

[3]Defendant notes that it processes all requests made by individuals for records pertaining to themselves under both the FOIA and the Privacy Act to provide the requester with the maximum disclosure authorized by law.  Ex. 6, Luczynski Supplemental Decl. ¶ 9.  Criminal case files maintained by the U.S. Attorney's Offices are part of the Department of Justice's Privacy Act system of records.  Id.  The Attorney General has promulgated regulations at 28 C.F.R. § 16.81(a)(1) which exempt the criminal case files of these Offices from the Privacy Act's access provisions as authorized by 5 U.S.C. § 552a(j)(2).  Id.  This provision exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.  Since Plaintiff's entire request pertains to criminal investigations, the materials were necessarily compiled for law enforcement purposes.  Id.  Therefore, the EOUSA determined that the responsive records withheld were not subject to disclosure under the Privacy Act.  Id.  The EOUSA next reviewed the records under the provisions of the FOIA.

Response to the Court's September 18, 2006 Order and Defendant's Motion for Summary Judgment (R. 52, pp. 9-12), and accordingly, will not be repeated herein.  However, in brief, a defendant agency's obligation is "to conduct a 'reasonable' search for responsive records 'using methods which can be reasonably expected to produce the information requested.'" Public Citizens, Inc. v. Department of Educ., 292 F.Supp.2d 1, 6 (D.D.C. 2003)(quoting Oglesby v. U.S. Dept. of Justice, 920 F.2d 57, 68 (D.C. Cir. 1990)).

　　　The record evidences that the EOUSA's search comported with legal requirements under the FOIA.  The Bowman declaration describes in detail the method used to conduct the search, the computerized systems searched, the rationale for searching those systems, and further, the additional contacts made to ensure a thorough search.  See generally, Ex. 5, Bowman Decl. Ms. Bowman's detailed declaration evidences that Defendant's search for responsive records was fully consistent with the obligations imposed by the FOIA.  See Looney v. Walters-Tucker, 98 F.Supp.2d 1, 3 (D.D.C. 2000); see also Elliott v. U.S. Atty. Gen., Civil Action No., 06-1128(JDB), 2006 WL 3191234 (D.D.C. Nov. 2, 2006)(Agency's search of its central database using key terms to find responsive records held adequate.).  For this reason, Plaintiff's claim challenging the EOUSA's search for

7

responsive records should be dismissed, and summary judgment granted to Defendant on this claim.

    **B.    EOUSA's Proper Application of FOIA Exemptions[4]**

        **1.    Exemption 2**

Pursuant to 5 U.S.C. § 552(b)(2) (" Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. National Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992); National Treasury Employees

---

[4] As noted in Defendant's March 21, 2007 Reply (R. 58, pp. 1-2), Plaintiff did not challenge the EOUSA's application of FOIA Exemptions to records released to Plaintiff resulting from the first search for records, only the search itself. See Plaintiff's Memorandum in Opposition to Defendant's November 22, 2006 Motion for Summary Judgment and in Further Support of Plaintiff's Pending Motion for Summary Judgment ("Pl.'s Op."), at 2, n. 2. Given such, Defendant, in its Reply, reiterated its request for summary judgment as to the application of FOIA exemptions on records found and released as a result of the first search.

    Further, Defendant's arguments regarding segregability made in its Response to the Court's September 18, 2006 Order and Motion for Summary Judgment (R. 48, pp. 19-20) apply with equal force to the documents processed as the result of the second search. See also Ex. 6, Luczynki's Supplemental Decl. ¶ 19 (attached hereto).

Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."[5] Schiller, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982); see also Schiller, 964 F.2d at 1207. Here, Exemption 2 is properly applied to withhold from public disclosure a property release form solely related to the personnel rules and practices of the Department of Justice. Ex. 6, Luczynski Supplemental Decl. ¶ 10 and Vaughn Index, p. 3 (attached thereto). The document is a standard form used for everyday matters within the agency. Ex. 6, Luczynski Supplemental Decl. ¶ 9. Accordingly, given that the form is an

---

[5]An agency may withhold information as "high 2" if it demonstrates that "(1) the withheld information is "predominantly internal" and (2) disclosure of the information would "significantly risk[] circumvention of agency regulations or statutes." Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F.Supp2d 146, 165 (D.D.C. 2004), quoting, Crooker, 671 F.2d at 1073-74. For purposes of this suit, Defendant has not designated any information as "high 2."

9

administrative document internal to the agency, to which the pubic would likely hold little or no interest, the form was properly withheld under FOIA Exemption 2.

### 2. Exemption 5

Exemption 5 protects from disclosure inter- and intra-agency communications that are covered by a traditional civil discovery privilege. See, e.g. Rockwell Internat'l Corp. v. Department of Justice, 235 F.3d 598, 601 (D.C. Cir. 2001); Martin v. Office of Special Counsel, 819 F.2d 1181, 1185 (D.C. Cir. 1987).[6] The EOUSA asserted this exemption to protect information pursuant to the attorney work product privilege.  The records or portions of records to which the privilege applies reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Plaintiff's criminal trial. Ex. 6, Luczynksi's Supplemental Decl. ¶ 12 and Vaughn Index. The records were prepared by or at the request or direction of an attorney, and made in anticipation of litigation. Id.

Further, these same records, in certain instances, contain deliberative process information of the USAO and other federal and state agencies in their consideration of possible criminal actions against Plaintiff. Id. ¶ 13.  To disclose the information would reveal pre-decisional communications among

---

[6]The standard was set out in greater detail in Defendant's Response to the Court's September 18, 2006 Order and Defendant's Motion for Summary Judgment, and thus, will not be repeated herein.

10

government personnel such as discussions of various litigation issues, alternatives, and strategies. Id.  Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making.  Id. Indeed, as applied to the subject documents, the attorney work product and deliberative process privileges are so interwoven as to make all, in essence, subject to the attorney work product privilege. Id.  Accordingly, consistent with FOIA Exemption 5, the privileged information was appropriately redacted.

### 3.    Exemption 7(C)

Exemption 7(C) exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires the courts to balance the public interest in disclosure, limited to information that contributes significantly to the public understanding of the operations or activities of the government, against the privacy interest that the Exemption is intended to protect.  See U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 775-76 (1989).  However, in contrast to other FOIA exemptions, Exemption 7(C) does not "require a balance tilted emphatically in favor of disclosure," but rather "recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and

investigators." Bast v. U.S. Dept. of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981).

Further, the Supreme Court in Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157 (2004) stated, "[w]here the privacy concerns addressed in Exemption 7(C) are present," the general "rule that [a person] need not offer a reason for requesting the information must be inapplicable[,]" and instead "the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." 541 U.S. at 172 (emphasis added). The requestor "must show" (1) the "public interest sought to be advanced is a significant one" and (2) the information requested "is likely to advance that interest." Id. (emphasis added). "Otherwise, the invasion of privacy is unwarranted." Id.

All information at issue in this case was compiled for law enforcement purposes in order to assist in the investigation and prosecution of Plaintiff. Ex. 6, Luczynksi's Supplemental Decl. ¶ 14. Specifically, the Exemption was applied to withhold the identities of and personal information about third party individuals including witnesses and law enforcement personnel who provided information to the investigation team. Id. ¶ 15. In many cases, the privacy-protected information was intertwined with information covered by the attorney work product privilege. Ex. 6, Luczynksi's Supplemental Decl., Vaughn Index (attached thereto)(references to documents titled "Government's Exhibit

12

List," "Writ of Habeas Corpus," "Witness Information," "Case Impression Memo," and "Closing Argument").

Release of the identifying information could result in unwanted efforts to gain further access to such persons or to personal information about them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences, all to their detriment.  Ex. 6, Luczynksi's Supplemental Decl. ¶ 15.  For this reason, Defendant determined that information contained in the otherwise responsive material could not be disclosed. Id.

There would be no public interest in the release of this privacy-protected information because dissemination of the information would not help explain the activities and operations of the EOUSA or the USAO for the District of Columbia.  See, e.g. Piper v. U.S. Dept. of Justice, 428 Supp.2d 1, 3 (D.D.C. 2006), aff'd, 2007 WL 754750 (D.C. Cir. Feb. 23, 2007)(The District Court noted that the public interest in knowing how the Department of Justice handles its investigations "is served whether or not the names and identifying information of third parties are redacted.."  The District Court explained that the public need not know the names of people the FBI investigated to glean information on the FBI's conduct of that investigation.)  Moreover, no individual provided any authorization or consent to disclose the otherwise privacy-sensitive information.

Accordingly, consistent with FOIA Exemption 7(C), third party information was appropriately withheld from public disclosure.

### III. CONCLUSION

For reasons explained herein and in its previous filings, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's suit with prejudice.

Date: April 9, 2007                 Respectfully Submitted,


                                    /s/ Jeffrey A. Taylor /dch
                                    _____
                                    JEFFREY A. TAYLOR, D.C. BAR #498610
                                    United States Attorney

                                    /s/ Rudolph Contreras
                                    _____
                                    RUDOLPH CONTRERAS, D.C. BAR #434122
                                    Assistant United States Attorney


                                    /s/ Beverly M. Russell
                                    _____
Of Counsel:                         BEVERLY M. RUSSELL, D.C. Bar #454257
David Luczynski, Esq.               Assistant United States Attorney
Executive Office of                 U.S. Attorney's Office for the
 U.S. Attorneys                      District of Columbia, Civil Division
                                    555 4th Street, N.W., Rm. E-4915
                                    Washington, D.C.  20530
                                    Ph:  (202) 307-0492

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of *Defendant's Supplemental Memorandum in Support of its Motion for Summary Judgment* was made by the Court's Electronic Case Filing System to:

Matthew David Slater
Cleary, Gottleib, Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1812
mslater@cgsh.com

this 9th day of April, 2007.

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney