UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VYRON WHEELER,

    Plaintiff,

      v.

EXECUTIVE OFFICE OF U.S.
ATTORNEYS,

    Defendant.

Civil Action No. 05–1133 (CKK)

**MEMORANDUM OPINION**
(January 17, 2008)

This case provides insight into how the Government should *not* conduct itself in response to a FOIA request. Plaintiff Vyron Wheeler, initially proceeding *pro se* but eventually represented by counsel, filed suit against Defendant Executive Office of U.S. Attorneys ("EOUSA") to obtain records related to his criminal conviction. Currently pending before the Court is Defendant's Motion for Leave to Respond to Plaintiff's Sur-Reply and the Parties' Cross-Motions for Summary Judgment. After thoroughly reviewing the Parties' submissions and the attachments thereto, applicable case law and statutory authority, and the record as a whole, the Court shall grant Defendant's [65] Motion for Leave to Respond to Plaintiff's Sur-Reply, grant Plaintiff's [35] Motion for Summary Judgment, and grant in part and deny in part Defendant's [48] Motion for Summary Judgment, for the reasons that follow.

**I. BACKGROUND**

This case has a lengthy history, but resolution of the remaining issues requires a fairly

detailed recitation of the facts that led to its present posture.[1]

    *A.        Plaintiff's Requests for Records*

On April 24, 2004, Plaintiff submitted a request to the Department of Justice pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (hereinafter "FOIA"), and the Privacy Act, 5 U.S.C. § 552a. Plaintiff requested "full disclosure and release of all records and/or data contained in the files of [the] agency, and specifically under [his] name and/or an identifier assigned to [his] name," in addition to several related but more specific categories of documents. Compl., Ex. 1 at 1-3 (April 2004 Request) ("hereinafter "First Request"). Plaintiff agreed to allow Defendant to redact from the records any third party identifying information if deemed necessary. *See Id.* at 4 ("[i]f it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release").

Marie A. O'Rourke, Assistant Director of the EOUSA Freedom of Information/Privacy Act Unit, responded to Plaintiff in a letter dated July 26, 2004. *See* Compl., Ex. 4 at 1 (July 2004 EOUSA Response). Ms. O'Rouke indicated that Plaintiff's request would be processed, but that "Project Requests," which include requests for "all information about myself in criminal case files," may take up to nine months to complete. *Id.* Ms. O'Rouke sent Plaintiff a second letter on September 16, 2004, stating that "[d]ue to the large number of requests received by the [EOUSA] and the limited resources available to process such requests, this office has been unable to process your request as of this date." Compl., Ex. 6 at 1 (September 2004 EOUSA Response).

---

[1] The background presented herein has been derived, in part, from this Court's [42] Memorandum Opinion dated Sept. 18, 2006.

Plaintiff filed an appeal on September 15, 2004 (presumably not yet having received the second letter from Ms. O'Rourke), indicating that he believed Ms. O'Rourke's July 2004 response constituted a denial of his request. Compl. Ex. 5 at 1 (September 2004 Appeal). Richard L. Huff, Co-Director at the Office of Information and Privacy sent Plaintiff a letter dated November 3, 2004, explaining that "the EOUSA is still processing your request. Although the Act authorizes you to treat the failure of the EOUSA to act on your request within the specified time limit as a denial thereof, this Office, because it lacks the personnel resources to conduct the record reviews that are necessary to make initial determinations on requests for records, cannot act until there has been an initial determination by the EOUSA." Compl., Ex. 7 at 1 (November 2004 Letter).

Plaintiff thereafter filed a second FOIA/Privacy Act request, described by Plaintiff as a "specified request," on November 15, 2004. Compl., Ex. 8 at 2 (November 2004 Request) (hereinafter "Second Request"). This Second Request sought "witnesses payment vouchers" in order "to ascertain whether public money was properly expended in MY criminal case F1386-96 United States [v.] Vyron Wheeler." *Id.* at 2. Plaintiff specifically requested "[t]he information, records with dollar amounts of all witnesses, including expert witnesses, friends, relatives of and standby witnesses who were paid with Government payment vouchers in case No. F1386-96 United States [v.] Vyron Wheeler." *Id.* at 3. Plaintiff again indicated that the agency could redact any third party identifying information in the requested documents. *See Id.* at 3-4 ("[i]f it should be determined that any material be deemed CONFIDENTIAL due to identify of source, the permission is granted to Agency to delete source identification "ONLY" from the material for release . . .").

3

Ms. O'Rourke responded to Plaintiff's Second Request on November 19, 2004, explaining that the nature of Plaintiff's Second Request for third-party documents precluded Defendant from even searching for such documents: "Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." Compl., Ex. 9 at 1 (December 2004 Denial). The letter also included a "Glomar" response, refusing to confirm or deny the existence of responsive records: "[w]e have not performed a search for records and you must not assume that records concerning a third party exist."[2] *Id.*

On January 28, 2005, Plaintiff submitted an appeal of Defendant's December 2004 denial. Compl., Ex. 10 at 1 (January 2005 Appeal). Plaintiff specifically agreed "that private personal information can be harmful and in some cases should not be released . . . as specified [in Plaintiff's FOIA request, the] agency may delete source information . . . [Plaintiff is] not interested in the witnesses [sic] information only in the amount paid by stipen/voucher [sic]." *Id.* at 2. Defendant sent letters to Plaintiff on February 14, 2005 and April 7, 2005 indicating that resolution of his appeal was forthcoming but subject to delay because of a backlog. *See* Compl., Ex. 11 (Feb. 2005 Response) and 12 (April 2005 Response). Plaintiff filed the instant Complaint on June 7, 2005.

---

[2] An agency's response that it can neither confirm nor deny the existence or non-existence of responsive records has become known as a "Glomar" response after the name of the vessel (the *Hughes Glomar Explorer*) that was the subject of a FOIA request for records in *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

*B.     Procedural History*

Defendant filed a Motion for Summary Judgment on November 28, 2005. Believing that Plaintiff's First Request had been superceded by his Second Request for document related to witness vouchers and related payments, *see* Def.'s Mot. for Summ. J. at 1 ("[r]elevant here, plaintiff requested information on witnesses' payment vouchers related to his trial"), Defendant argued that it was entitled to summary judgment because Plaintiff failed to "submit releases from the third parties who are the subject of his FOIA request and failed to present a public interest argument favoring disclosure notwithstanding third party privacy interests." *Id.* Defendant's Motion did not address Plaintiff's repeated assertions that Defendant could redact the third-party information, nor did Defendant raise any justification for its "Glomar" response (which apparently led Defendant to believe that it had no obligation to search for responsive documents).

Plaintiff filed his Opposition on January 30, 2006, arguing that he had not abandoned his First Request for documents, and that Defendant had failed to justify its withholding of documents responsive to his Second Request. *See* Pl.'s Opp'n at 1-5. Plaintiff again reiterated that he was not seeking to obtain any third party identities, and that Defendant could redact information related to the same. *See* Pl.'s Opp'n, Ex. 2 ¶¶ 18, 22 (Decl. of V. Wheeler dated Jan. 18, 2006). Plaintiff also filed a Cross-Motion for Summary Judgment the following day wherein he requested disclosure of the documents at issue. *See* Pl.'s Mot. for Summ. J. at 7.

Defendant filed its consolidated Reply and Opposition to Plaintiff's Cross-Motion on February 24, 2006. Defendant indicated that it would undertake a search for records responsive to Defendant's First Request "given Plaintiff's clear indication that he remains interested in receiving [those] documents. . . ." Def.'s Reply and Opp'n at 4. To that end, Defendant

5

submitted the Affidavit of David Luczynski, an Attorney Advisor employed by Defendant, who stated that Defendant would search for responsive documents at "the Federal Records Center as well as the District's offices. . ." Def.'s Reply Ex. 1, ¶ 6 (Decl. of D. Luczynski dated Jan. 27, 2006). As for Plaintiff's Second Request for witness payment information, Defendant somewhat surprisingly repeated its prior statements that Plaintiff failed to present a third party waiver or proof of death certificate, again ignoring Plaintiff's repeated assertions that third party information could be redacted from the records. *Id.* at 2. Defendant also failed to provide any justification for its "Glomar" response.

The Court issued an Order and accompanying Memorandum Opinion on September 18, 2006, finding that Defendant failed to provide an "adequate justification (or really any justification at all) for its use of a 'Glomar' response to Plaintiff's [Second] Request." [42] Mem. Op. at 19. The Court explained that a "Glomar" response requires an affidavit or declaration "with a detailed explanation of why the [] response is necessary to support the agency's claim of a FOIA exemption from release." *Id.* at 19-20 (quoting *Lowe v. DEA*, Civ. No. 06-1133, slip [5] ("Defendant's Motion to Dismiss") (D.D.C. Sept. 1, 2006). In the absence of a detailed response, or any justification at all, the Court held that it had "insufficient information in order to make a determination with respect to the non-search for and non-release of documents pertaining to said request." *Id.* at 23. The Court agreed with Defendant, however, that Defendant's confusion with respect to whether Plaintiff had abandoned his First Request for documents was not unfounded, so the Court did not infer that the agency had acted in bad faith. *Id.* at 23-24. Accordingly, the Court denied Defendant's [19] Motion for Summary Judgment without prejudice, allowing Defendant to file a brief with accompanying affidavits describing the search

6

for responsive documents and providing justification for its "Glomar" response. The Court further held Plaintiff's [35] Motion for Summary Judgment in abeyance pending Defendant's compliance with that Order.

While Defendant's response to Plaintiff's FOIA requests had not been a model of precision prior to the Court's September 18, 2006 Order, Defendant's response after the Order was even more deficient. Defendant filed its Response to the Court's September 18, 2006 Order and Motion for Summary Judgment on November 22, 2006. Defendant attached the declaration of David Luczynski stating that a "FOIA Contact" conducted "a systematic search for records on Vyron Wheeler to determine the location of any and all files related to him . . . ." Def's Mot. for Summ. J., Ex. ¶ 3 (Decl. of D. Luczynski dated Nov. 6, 2006). Defendant further stated that the FOIA Contact used the Public Access to Court Electronic Records ("PACER") and the Legal Information Office Network System ("LIONS") systems to search for response documents. *Id.* ¶ 5. According to Defendant, this "expansive search for records responsive to Plaintiff's first FOIA request [] encompass[es] those relevant to Plaintiff's second request for witness payments and vouchers." Def.'s Mot. For Summ. J. At 5 n.3. Mr. Luczynski's declaration specifically represented that "[t]here are no other records systems or locations within the District of Columbia in which other files pertaining to Plaintiff's criminal case, were maintained." Def.'s Mot. for Summ. J., Ex. 1 ¶ 7. Based on this search, Defendant released to Plaintiff 22 full pages of records and 42 pages with redactions. *See* Def.'s Mot. For Summ. J. at 7. An additional 62 pages of records were withheld in full based on FOIA exemptions 5 and 7. *Id.* At 12-19; *see also* 5 U.S.C. §§ 552(b)(5), (7).

Rather than justify its "Glomar" response with respect to Plaintiff's Second Request, and

despite having previously refused to confirm or deny the existence of the records responsive to Plaintiff's Second Request, Defendant claimed that it had not, in fact, articulated a "Glomar" response.[3]  *See* Def.'s Mot. for Summ. J. at 4 n.2.  In any event, a justification for Defendant's position seemed to be moot because Mr. Luczynski stated that no such documents existed.  *See* Def.'s Mot. for Summ. J., Ex. 2 ¶ 6 (Affid. of D. Luczynski dated Nov. 21, 2006).[4]

At this point, counsel entered an appearance on behalf of Plaintiff and filed an Opposition to Defendant's Motion for Summary Judgment and Supplement to Plaintiff's Pending Motion for Summary Judgment on January 26, 2007.  Plaintiff cogently explained that the declaration and affidavit submitted with Defendant's Motion for Summary Judgment demonstrated the inadequacy of Defendant's search for documents, notwithstanding its characterization of the search as "expansive." Pl.'s Opp'n at 5-8.  For example:

1. Mr. Luczynski's initial declaration, submitted on January 26, 2006, indicated that Defendant would search the Federal Records Center and the District's offices for records responsive to Plaintiff's request.  Mr. Luczynski's declaration submitted on November 22, 2006, indicated that Defendant only used PACER and LIONS to search for records, and provided no indication that those systems were capable of searching the Federal Records Center or the District's offices for documents;

---

[3] Defendant's explanation concerning its failed "Glomar" response is that it "did not raise a 'Glomar' argument . . . [but] instead solely moved for Summary Judgment because Plaintiff failed to provide a third party waiver . . . ." Def.'s Resp. and Mot. for Summ. J. at 4 n.2.  Defendant's "explanation" fails to explain why – if this were not a "Glomar" response – Defendant did not fulfill its obligations to search for documents, review them, and segregate non-exempt information for release.  *See Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  The Court also notes that Defendant eventually searched for and released this payment information to Plaintiff, *see* Pl.'s Sur-Reply at 5, so Defendant has clearly abandoned the argument that it had no duty to search for, nor confirm the existence of, those documents.

[4] This affidavit was filed unsigned, but it was re-filed on November 27, 2006 as a signed copy.

      2.      Defendant searched for records using the name "Wheeler," but provided no indication that it also searched for documents associated with Plaintiff's case number, the name of the co-defendant in Plaintiff's criminal case, or any internal administrative numbers associated with Plaintiff that may have existed; and

      3.      Defendant provided no indication that it asked the United States Attorney who prosecuted Plaintiff's case whether she maintained any records responsive to Plaintiff's request.

*See* Pl.'s Opp'n at 6-8. Based on these deficiencies, Plaintiff argued that Defendant's search was inadequate.[5]

Plaintiff's Opposition achieved its desired effect. On March 21, 2007, Defendant notified the Court and Plaintiff that "upon consideration of certain points presented in Plaintiff's opposition, Defendant, on its own, conducted a second search. Additional documents were found . . . Defendant therefore withdraws its arguments related to the adequacy of the search based on its initial effort in this regard . . . ." Def.'s Reply at 2. Defendant indicated that it would file a supplemental memorandum "addressing the additional records acquired as a result of the second search." *Id.* Defendant filed its Supplemental Memorandum on April 9, 2007. This submission was supported by the declaration of Susan Bowman, Supervisory Operations Specialist for the Superior Court Division, United States Attorney's Office for the District of Columbia. *See* Def.'s Suppl., Ex. 1 ¶ 1. Ms. Bowman notified the Court that Mr. Luczynski's declaration dated November 6, 2006, contained incorrect information. Although Mr. Luczuenski had stated that Defendant searched for responsive records using PACER and LIONS, Ms. Bowman indicated that she was the "FOIA Contact" who had performed this search, and that she

---

[5] Plaintiff did not "challenge the government's decisions to produce, redact, or withhold the specific documents identified" in its Response. *See* Pl.'s Opp'n at 5 n.3.

used two different search systems ("RCIS" and "CFITS"). *Id.* ¶ 7. Ms. Bowman further stated that she had only copied certain of the response documents during her first search, but had now copied "all" of the responsive documents during her second search. *Id.* ¶¶ 12, 13. Addressing the other concerns raised in Plaintiff's Opposition, Ms. Bowman stated that she also contacted the prosecutor in Plaintiff's criminal case to determine whether she had any responsive documents (she did not), and broadened the search terms used to find responsive records, including Plaintiff's case number. *Id.* ¶¶ 8, 10, 14. These efforts resulted in an additional 315 full pages and 80 redacted pages of records being released to Plaintiff. *See* Def.'s Suppl., Ex. 2 ¶ 2 (Decl. of D. Luczynski dated Apr. 9, 2007). Defendant withheld 266 pages in full based on various FOIA exemptions. *Id.*

To summarize the state of the proceedings to this point, Defendant has submitted declarations or affidavits to the Court that contained at least three inaccuracies:

1. Mr. Luczynski's declaration dated November 6, 2006, stated that the only systems used to search for responsive documents were PACER and LIONS, Decl. ¶ 5, when in fact, those systems were not used to search for responsive documents. *See* Decl. of S. Bowman dated March 23, 2007 ¶ 7;

2. Mr. Luczynski's declaration dated November 6, 2006, stated that"[t]here are no other records systems or locations within the District of Columbia in which other files pertaining to Plaintiff's criminal case[] were maintained," Decl. ¶ 7, when in fact, other systems and locations did exist. *See* Decl. of S. Bowman dated March 23, 2007 ¶ 7-14.

3. Mr. Luczynski's affidavit dated November 21, 2006, stated that Defendant's search was "expanded to its broadest scope" and that no witness payment or voucher information existed in Defendant's files, Affid. ¶ 6, when in fact, witness payment or voucher information did exist. *See* Pl.'s Sur-Reply at 4.

Defendant had also failed to maintain a consistent position on the records at issue:

      1.      Defendant abandoned its "Glomar" response after the Court ordered further briefing on the apparent implausibility of that argument; and

      2.      Defendant abandoned its position that an adequate search had been performed after Plaintiff's counsel pointed out the deficiencies of Defendant's search.

On May 25, 2007, Plaintiff filed a Sur-Reply to Defendant's Supplemental Memorandum. Although Plaintiff did not challenge Defendant's redactions or withholding of records, Plaintiff argued that Defendant's search was still inadequate because it failed to search for records in the files associated with the co-defendant in Plaintiff's criminal case, as Plaintiff had specifically discussed in his Opposition to Defendant's Motion for Summary Judgment filed on January 26, 2007. *See* Pl.'s Sur-Reply at 7-8. Plaintiff also asked for costs and attorney's fees. *Id.* at 10-11.

Defendant requested leave to file a Response to Plaintiff's Sur-reply on June 28, 2007. In the Response, Defendant claimed that a search for records associated with Plaintiff's co-defendant would have required "clairvoyan[ce]," and that its search was adequate. *See* Def.'s Resp. at 3. Defendant also argues that a judgment with respect to costs and attorney's fees is premature. *Id.* at 5-7.

## II.  LEGAL STANDARD

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (internal quotation and citation omitted); *see also Summers v. Dep't of*

*Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B) (b)(1)-(9).

The Court reviews an agency's refusal to disclose requested documents *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). Generally, when summary judgment is requested in a FOIA matter, the agency bears the burden of showing that a FOIA exemption applies. *Smith v. U.S. Dep't of Justice,* 251 F.3d 1047, 1050 (D.C. Cir. 2001). To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). In addition, the agency's accompanying affidavits or declarations must describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2004). *See also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs.*, 926 F.2d at 1200).

In determining the adequacy of a FOIA search, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotation marks and citation omitted). If the plaintiff questions the adequacy of a search for documents made by the agency, "the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs.*, 926 F.2d at 1201. The agency affidavits used to establish the adequacy of a search "must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" *Id.* at 1200 (quoting *Grounds Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and quotation marks omitted)).

While the agency may withhold valid materials under a specific exemption to FOIA, it must release "any reasonably segregable portion[s]" once it has redacted the exempted information. 5 U.S.C. § 552(b). After all, FOIA allows for the release and review of "information, not documents." *See Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). The agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are required to consider segregability issues even when the parties have not specifically raised such claims. *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### III.  DISCUSSION

Despite the lengthy history of this case, only two issues remain.  The first issue relates to whether Plaintiff is entitled to costs and attorney's fees.  The Court agrees with Defendant that resolution of this issue is premature, and the Court shall allow the Parties to brief this issue as set forth in the Order accompanying this Memorandum Opinion.  The second issue relates to the adequacy of Defendant's search for responsive records.  Plaintiff does not challenge Defendant's withholding and redacting of records identified by its search, so the Court shall grant the portion of Defendant's Motion for Summary Judgment related to the same.  The remaining issue is whether Defendant should have searched for responsive records in the files of the co-defendant in Plaintiff's criminal case.  That issue has been fully briefed and is ripe for decision.

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness.  *Ogelsby*, 920 F.2d at 68.  "The Court employs a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting in favor of disclosure."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations omitted).  *See also Kronberg v. U.S. Dep't of Justice*, 875 F. Supp. 861, 869 (D.D.C. 1995) (the adequacy of the search is "'dependent upon the circumstances of the case'") (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  An agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Ogelsby*, 920 F.2d at 68; *accord Campbell*, 164 F.3d at 27 (same).  Although the agency need not uncover every responsive document to fulfill its obligations, *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("[p]erfection is not the standard by which the reasonableness of a FOIA

search is measured"), the agency must perform a search that is, under the circumstances, "'reasonably calculated to uncover relevant documents.'" *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg*, 745 F.2d at 1485)).

In the present case, Plaintiff's First Request for documents asked for "all records and/or data contained in the files of [the United States Attorney's Office], and specifically under [Plaintiff's] name and/or an identifier assigned to [Plaintiff's] name." Compl., Ex. 1 at 1. Plaintiff also characterized this request as one "relating to case F1386-96." *Id.* at 2. Plaintiff's second request asked for information "including expert witnesses, friends, relatives of and standby witnesses who were paid with Government payment vouchers in case No. F1386-96 . . . ." Compl., Ex. 8 at 3. Based on these requests, Defendant argues that "there is nothing in Plaintiff's requests and Complaint suggesting or recommending that Defendant's search should have encompassed files that were not 'under Plaintiff's name' or in his criminal case." Def.'s Resp. at 3. Although Defendant concedes that it has a duty "to construe a FOIA request liberally," Defendant argues that " it does not have to be clairvoyant." *Id.*

The Court finds that Defendant did not have to rely on clairvoyance or any other nontraditional resource in order to adequately search for documents responsive to Plaintiff's requests. Plaintiff filed his Opposition to Defendant's renewed Motion for Summary Judgment on January 26, 2007. Plaintiff's Opposition specifically identified the deficiencies associated with Defendant's first search, including Defendant's failure to search for records in the files of the co-defendant in Plaintiff's criminal trial. *See* Pl.'s Opp'n at 6 ("the government did not even bother to search under Mr. Wheeler's or his co-defendant's trial [or appellate] case numbers . . . nor did it search under Mr. Wheeler's co-defendant's name"). In March 2007, Defendant

15

undertook a more complete search that sought to remedy the deficiencies identified in Plaintiff's Opposition. Ms. Bowman specifically states in her declaration that she relied "upon the points argued in Plaintiff's opposition memorandum filed on or around January 26, 2007" to guide her search. Def.'s Reply, Ex. 1 ¶ 10. She inexplicably failed to include a search for responsive records in the files of Plaintiff's co-defendant, even though it was specifically discussed in Plaintiff's Opposition.

There is nothing unusual about searching for responsive documents in a co-defendant's files, *see Butler v. U.S. Dep't of Justice*, No. 03-0915, 2005 U.S. Dist. LEXIS 5419 at *3 (D.D.C. Mar. 29, 2005) (ordering defendant to search for responsive records in several locations, including the files associated with the plaintiff's co-defendant), and such a search would have required few additional resources in this instance because Defendant had already agreed to perform another search for records with additional search terms. The Court also notes that a search for records in the co-defendant's files is not necessarily inconsistent with Plaintiff's requests, as Plaintiff and his co-defendant were apparently tried together, *see Wheeler v. United States*, 832 A.2d 1271, 1272 n.1 (D.C. 2003), and Plaintiff had requested documents pertaining to his case (not just those associated with his name). *See* Compl., Ex. 8 at 2 (requesting "[t]he information, records with dollar amounts of all witnesses, including expert witnesses, friends, relatives of and stanby witnesses who were paid with Government payment vouchers in case No. F1386-96 United States [v.] Vyron Wheeler").

In light of the specific notice provided by Plaintiff identifying the deficiencies of Defendant's first search (which prompted Defendant to conduct a second search), and given the circumstances of this case (Defendant's previous refusal and then failure to perform an adequate

search for documents), the Court finds it unreasonable under the circumstances that Defendant would not have searched for responsive records in the files of Plaintiff's co-defendant when it was on notice that Plaintiff was requesting that search. Thus, the Court shall require Defendant to perform the search for these records in accordance with this Court's Order and accompanying Memorandum Opinion.

### IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's [65] Motion for Leave to Respond to Plaintiff's Sur-Reply, grant Plaintiff's [35] Motion for Summary Judgment, and grant in part and deny in part Defendant's [48] Motion for Summary Judgment. Defendant shall produce any remaining documents identified as a result of the search described in this Memorandum Opinion no later than February 5, 2008. The Parties shall file a Joint Status Report concerning Defendant's compliance with this additional search and any disputes arising from information deemed exempt from disclosure no later than February 8, 2008. The Court encourages the Parties to make an effort to resolve without Court intervention any issues of whether attorney's fees and costs are appropriate in this case. If all issues are resolved except for attorney's fees and costs, the Parties shall also file a proposed Joint Briefing Schedule on the issue of attorney's fees and costs no later than February 22, 2008.


Date:    January 17, 2008


                                                /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge